IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-cr-00047 (APM) |
| v. | : | 40 U.S.C. § 5104(e)(2)(D) |
| | : | 40 U.S.C. § 5104(e)(2)(G) |
| DAVID BRIAN HOWARD, | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, David Brian Howard, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Riot at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***David Brian Howard's Participation in the Riot at the U.S. Capitol on January 6, 2021***

8. On January 4, 2021, DAVID BRIAN HOWARD ("HOWARD") flew from Dallas to Miami on American Airlines Flight 1456. On January 5, 2021, HOWARD flew from Miami to Washington, D.C. on American Airlines Flight 2049. While in Washington, D.C., HOWARD stayed at the Homewood Suites by Hilton at 50 M St. SE Washington, D.C. 20003, which is approximately 1.1 miles from the U.S. Capitol.

9. HOWARD planned on attending the protests in Washington, D.C. and knew about Congress' role in certifying the 2020 presidential election on January 6, 2021. Specifically, HOWARD saved a screenshot of a social media post describing several planned events on January 6. The post stated, among other things, "We the People must take to the US Capitol lawn and steps and tell Congress #DoNotCertify on #JAN6! Congress cannot certify this fraudulent Electoral College."

10. On January 6, 2021, HOWARD attended the former President's "Stop the Steal" rally at the Ellipse, where he recorded video of the former President's speech. After attending the rally, HOWARD proceeded to walk to the U.S. Capitol.

11. Around 2:37 PM, CCTV surveillance footage captured HOWARD within restricted grounds on the Upper West Terrace of the U.S. Capitol near the Senate Wing Doors. Around the same time, open-source video showed HOWARD near the same location on the Upper West Terrace of the U.S. Capitol. Moments earlier, tear gas was deployed outside the Senate Wing Doors and in HOWARD's vicinity.

12. About twenty minutes later, at 3:01 PM, CCTV surveillance footage showed HOWARD entering the Capitol building through the Senate Wing Doors. By that time, the windows surrounding the Senate Wing Doors had been smashed and an alarm was audibly sounding. Once inside, HOWARD used his cell phone to take photographs and/or record videos. The Federal Bureau of Investigation was unable to recover these photographs and/or videos after a forensic search of HOWARD's cell phone. At one point, HOWARD approached a line of USCP officers in riot gear guarding the north end of the corridor before turning around.

13. A few minutes later, at 3:05 PM, HOWARD exited the U.S. Capitol through the Senate Wing Doors, the same doors through which he entered.

14. Two minutes later, at 3:07 PM, HOWARD entered the Capitol a second time through the Senate Wing Doors. At this time, USCP officers in riot gear were still guarding the north end of the corridor.

15. HOWARD proceeded to walk south down the corridor, further into the Capitol building and towards the Crypt. Both open-source video and CCTV surveillance footage depicted HOWARD entering the Crypt of the U.S. Capitol at approximately 3:08 PM. For approximately

the next minute, HOWARD wandered around the Crypt and, at one point, approached several police officers. He then turned around and headed back towards the door through which he entered, exiting the Crypt at 3:09 PM.

16. At 3:12 PM, HOWARD reappeared near the Senate Wing Doors. Around the same time, open-source video showed HOWARD briefly lowering his mask to talk to another rioter while an alarm can be heard sounding. HOWARD exited the U.S. Capitol building about one minute later. Altogether, HOWARD was inside the U.S. Capitol for approximately ten minutes.

17. HOWARD departed from Washington, D.C. on January 7, 2021.

### *Elements of the Offense*

18. The parties agree that disorderly and disruptive conduct in a Capitol Building or Grounds under 40 U.S.C. § 5104(e)(2)(D) requires the following elements:

   a. The defendant engaged in disorderly or disruptive conduct within the United States Capitol Grounds or in any of the United States Capitol Buildings.

   b. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

   c. The defendant acted willfully and knowingly.

19. The parties agree that that parading, demonstrating, or picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) requires the following elements:

   d. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

   e. The defendant acted willfully and knowingly.

*Defendant's Acknowledgments*

20. HOWARD knowingly and voluntarily admits to all the elements as set forth above. Specifically, HOWARD admits:

    f. While inside the Capitol Building, HOWARD paraded, demonstrated, or picketed;

    g. HOWARD knew at the time he entered the Capitol Building that he did not have permission to enter the building, and he did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress; and

    h. Because congressional proceedings could not resume until every unauthorized occupant was removed or left the Capitol Building, HOWARD's presence in the Capitol Building on January 6, 2021, did in fact disrupt the orderly conduct of a session of Congress.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____
JAKE ELIJAH STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6931
Email: Jake.Struebing@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

I, David Brian Howard, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 3/27/24

DAVID BRIAN HOWARD
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 3/28/24

NABEEL KIBRIA, ESQ.
Attorney for Defendant